STATE OF NORTH CAROLINA v. WILLIAM DOUGLAS CONNARD

No. 8527SC1249

(Filed 17 June 1986)

1. Searches and Seizures § 31— search warrants—drugs and stolen goods—provisions severable

Provisions of a search warrant directing officers to search defendant's house and van for dilaudid, valium, and "stolen goods" were severable so that police could constitutionally search for the listed drugs or items of the same class, but the warrant could not authorize a general exploratory search of defendant's home and inventory of its contents.

2. Searches and Seizures § 33— search of house and van—stolen items not in plain view

With the exception of a television from which the outside serial number had been removed, stolen goods were illegally seized from defendant's house and van and should have been suppressed where officers could not identify any of the "stolen property" mentioned in the search warrant until after they had entered the house and van, inventoried the items they found, and compared them against stolen property lists, and there was no evidence of other circumstances which might properly have excited further inquiry, such as unusual quantity or types of items or unusual storage arrangements.

3. Receiving Stolen Goods § 7— sufficiency of verdict

There was no merit to defendant's contention that the verdict reached, "Guilty of Possession of Personal Property of Ronald Hewitt," constituted prejudicial error because the verdict reached was not a crime, since there is no requirement that the written verdict contain each and every element of the subject offense; it is sufficient if the verdict can be properly understood by reference to the indictment, evidence and jury instructions; and the record, including the indictment and the instructions, made it abundantly clear, beyond mistake by the jury, that knowing possession of goods stolen from Hewitt was at issue.

Judge WEBB dissenting.

APPEAL by defendant from *Lewis (Robert D.), Judge*. Judgments entered 25 July 1985 in Superior Court, GASTON County. Heard in the Court of Appeals 10 April 1986.

Defendant was tried on two separate indictments alleging felonious possession of stolen goods, the property of Gaston Memorial Park and one Ronald Hewitt, respectively. Before trial, defendant moved to suppress the stolen goods.

At the *voir dire* hearing, police officers testified that they went to defendant's residence with a search warrant. The warrant was based on information from a confidential and reliable informant. According to the affidavit attached to the warrant, at defendant's home the informant had seen drugs for sale. The informant also stated that there were "several stolen items" in the house and that defendant also kept stolen goods in his van. The applicant officer stated that he knew defendant and knew that defendant had "been charged before with drugs and stolen goods." The search warrant directed officers to search defendant's house and van for dilaudid, valium, and "stolen goods." No more specific description of the "stolen goods" was given.

Police searched the house and the van, finding drugs in both. Also inside the van they found tools and garden equipment in plain view. There was nothing about the tools suggesting they had been stolen, though police radioed the serial numbers in to police headquarters. The items were identified from the serial numbers as having been stolen from Gaston Memorial Park. Without the radio information, the officers would not have known they were stolen. The officers seized the van and all its contents and the following day sorted through them. Many items seized in the van were not stolen. Inside the house the officers also found in plain view a TV set from which the outside serial number had been removed. Officers took it to headquarters where they opened it up the next day and found the inside serial number. This number identified the set as having been stolen from Hewitt.

The trial court denied defendant's motion to suppress based on the fact that the officers acted in "objectively reasonable reliance" on the search warrant to investigate items found in plain view while they were lawfully on the premises searching for the drugs.

The evidence at trial was substantially the same as that presented on *voir dire*. Defendant presented no evidence. The jury found defendant guilty of felony possession of stolen goods with respect to the tools and garden equipment, but only guilty of

misdemeanor possession with respect to the TV. From judgment imposing sentences aggregating five years, defendant appeals.

*Attorney General Thornburg, by Assistant Attorney General John F. Maddrey, for the State.*

*Dolley and Warshawsky, by Steve Dolley, Jr., Mark Warshawsky and Page Dolley Morgan, for defendant-appellant.*

EAGLES, Judge.

I

In his first assignment of error defendant challenges the court's ruling denying his motion to suppress. He argues that authorization to search for "stolen goods" violated constitutional requirements that warrants particularly describe the object(s) of the search, and that police thereby engaged in an unlawful "fishing expedition" through his house and van.

A

The Fourth Amendment to the United States Constitution requires, in the absence of consent or exigent circumstances, that searches be conducted pursuant to warrant. *Steagald v. United States*, 451 U.S. 204, 68 L.Ed. 2d 38, 101 S.Ct. 1642 (1981). The search warrant may issue only ". . . upon probable cause, supported by Oath or Affirmation, and *particularly describing* the place to be searched and the persons or things to be seized." U.S. Const. Amend. IV. (Emphasis added.) The requirement of particular description responds to the abhorred practice in colonial times of issuance of "general warrants," also barred by the Constitution of North Carolina. N.C. Const. Art. I, Section 20; *State v. Richards*, 294 N.C. 474, 242 S.E. 2d 844 (1978). Indeed, the practice (originating in the Star Chamber) of issuing general warrants (or "writs of assistance"), empowering English officers to search suspected places *in their discretion*, provided the impetus for the first open resistance to British oppression. *See Boyd v. United States*, 116 U.S. 616, 29 L.Ed. 746, 6 S.Ct. 524 (1886). The particularity requirement serves to limit the discretion of the searching officer(s), and keep the search focused on its ostensible objects. *Marron v. United States*, 275 U.S. 192, 72 L.Ed. 231, 48 S.Ct. 74 (1927), *reh'g denied*, 277 U.S. 613, 72 L.Ed. 1016, 48 S.Ct.

206 (1928). The particularity requirement does not necessarily guard against the initial entry into the home, but in light of the Fourth Amendment's policy to keep searches limited, it operates primarily to prevent "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 29 L.Ed. 2d 564, 583, 91 S.Ct. 2022, 2038, *reh'g denied*, 404 U.S. 874, 30 L.Ed. 2d 120, 92 S.Ct. 26 (1971); *Steagald v. United States, supra.*

## B

Where the items described are contraband by their very nature, *e.g.* drugs or gambling equipment, the courts have generally approved warrants which simply authorize a search for that class of contraband. *See People v. Schmidt*, 172 Colo. 285, 473 P. 2d 698 (1970); 2 W. LaFave, Search & Seizure Section 4.6(b) (1978). This court has routinely approved the admission of drugs seized pursuant to such language. *State v. Keitt*, 19 N.C. App. 414, 199 S.E. 2d 23 ("heroin"), *cert. denied*, 284 N.C. 257, 200 S.E. 2d 657 (1973), *cert. denied*, 415 U.S. 990, 39 L.Ed. 2d 887, 94 S.Ct. 1589 (1974); *State v. Altman*, 15 N.C. App. 257, 189 S.E. 2d 793 ("marijuana and other narcotic drugs"), *cert. denied*, 281 N.C. 759, 191 S.E. 2d 362 (1972); *State v. Foye*, 14 N.C. App. 200, 188 S.E. 2d 67 (1972) ("narcotic drugs, the possession of which is a crime"). In *State v. Shirley*, 12 N.C. App. 440, 183 S.E. 2d 880, *cert. denied*, 279 N.C. 729, 184 S.E. 2d 885 (1971), we rejected defendant's contention that a search warrant authorizing a search for "illegally held narcotic drugs" did not permit the introduction of both marijuana and LSD, even though the affidavit on which the warrant rested contained only information about marijuana.

## C

Stolen goods, on the other hand, do not qualify automatically as contraband, but generally are innocuous except for the extrinsic circumstance that they have been stolen. Therefore the courts require a higher degree of specificity in determining the legality of searches for stolen goods. *See* 2 W. LaFave, Search & Seizure Section 4.6(c) (1978). In *State v. Myers*, 266 N.C. 581, 146 S.E. 2d 674 (1966), our Supreme Court considered a warrant that commanded a search of a home that the applicant believed "unlawfully contain[ed] contrary to law stolen merchandise." The Court held summarily that the application and warrant were factually

insufficient and therefore illegal under the prohibition against general warrants. Accordingly evidence obtained pursuant to the warrant should not have been admitted. *See also United States v. Burch*, 432 F. Supp. 961 (D. Del. 1977) (similar), *aff'd*, 577 F. 2d 729 (3d Cir. 1978) (mem.).

In certain cases where the circumstances have made an accurate description impossible, the courts have occasionally relaxed the more stringent specificity requirements regarding stolen goods. *See for example State v. Withers*, 8 Wash. App. 123, 504 P. 2d 1151 (1972) ("merchandise" from ship; adequate, since ship had been severely damaged by fire and accurate inventory impossible); *State v. Salsman*, 112 N.H. 138, 290 A. 2d 618 (1972) ("42 sheets of plywood"; no more accurate description possible); *United States v. Scharfman*, 448 F. 2d 1352 (2d Cir. 1971) ("fur coats, stoles, jackets and other finished fur products"; "legion of fur experts" would have been required to meet specificity requirements), *cert. denied*, 405 U.S. 919, 30 L.Ed. 2d 789, 92 S.Ct. 944 (1972). None of these exceptions apply here, however.

### D

Here the warrant authorized police to search both for drugs *and* for "stolen goods." The search for the drugs would therefore have been legal even if the warrant had not contained the "stolen goods" language, while without the references to drugs the warrant would have been invalid on its face under *State v. Myers, supra*. We now consider the efficacy of the search warrant in light of the internal conflict. This appears to be a question of first impression in this State. It involves two conflicting considerations: the policy against general exploratory searches discussed earlier, and the "plain view" doctrine.

### E

Under the plain view doctrine, objects in the plain view of an officer who has a right to be in the position to have that view may lawfully be seized even in the absence of a description in the warrant, provided the officer did not already know of the existence and location of the objects at the time the warrant issued and provided that their contraband nature is "immediately apparent." *Coolidge v. New Hampshire, supra; State v. Richards, supra*. The lack of prior knowledge or "inadvertence" requirement

is an important part of the plain view doctrine, without which police could easily evade the constitutional particularity requirements. *Coolidge v. New Hampshire, supra*; 2 W. LaFave, Search & Seizure Section 4.11(c) (1978). It could be argued that since the officers here had the right to search defendant's house and van for drugs, any other previously unknown items they saw during such a search properly were in plain view. The subsequent radio communication between the police, lawfully in the house and van, and headquarters did not impinge on any constitutionally protected interests of defendant. *See United States v. Kitowski*, 729 F. 2d 1418 (11th Cir. 1984). By this reasoning, police seizure of items found inadvertently during the search for drugs and subsequently identified as stolen by radio check would be permissible.

The Supreme Court of North Dakota recently reached this very result. *State v. Riedinger*, 374 N.W. 2d 866 (N. Dak. 1985). There police had probable cause, and obtained a warrant, to search a house for "controlled substances." The officers merely suspected that the occupants had stolen goods on the premises, and used the ultimately successful drug search as "an opportunity to see stolen goods." They found a microwave oven in the basement, radioed in the serial number, and discovered that the oven was stolen. The court held the oven admissible, since it was in "plain view"; no privacy interest was disturbed by the noting of the serial number; and officers had no reason to know of the presence or location of the oven before they entered the house, but that the contraband nature of the oven became "immediately apparent" upon receipt of the radio message. *But see United States v. Szymkowiak*, 727 F. 2d 95 (6th Cir. 1984) (decision to call in numbers and identification expert meant that criminal nature of goods not "immediately" apparent).

F

A substantial body of case law supports a different approach, *i.e.*, that the provisions of the warrant are severable. *See* Annot., 32 A.L.R. 4th 378 (1984); Annot., 69 A.L.R. Fed. 522 (1984). Under this analysis, adopted by the majority of courts which have considered the question, *id.*, items adequately described in the warrant may be seized and admitted into evidence, while items seized under unlawfully broad or "catch-all" provisions of the warrant should be suppressed. For example, a warrant which specifically

authorized a search for twelve large plastic bags of marijuana and "any other contraband which is unlawfully possessed" supported the seizure and admission of the bags of marijuana but not, by severance, other contraband seized in a general search. *People v. Niemczycki*, 67 A.D. 2d 442, 415 N.Y.S. 2d 258 (1979). Likewise, in *United States v. Giresi*, 488 F. Supp. 445 (D.N.J. 1980), firearm silencers described in the warrant were allowed into evidence, but the court suppressed those items seized under illegally broad descriptions such as "United States currency" or "stolen property." *See also Sovereign News Co. v. United States*, 690 F. 2d 569 (6th Cir. 1982) (language "other magazines and movies of the same kind and nature" did not make warrant prejudicially general, where agents seized only described items), *cert. denied*, 464 U.S. 814, 78 L.Ed. 2d 83, 104 S.Ct. 69 (1983).

Our research indicates that the severance principle has not been expressly passed upon by the United States Supreme Court although it has been approved in *dicta. Andresen v. Maryland*, 427 U.S. 463, 49 L.Ed. 2d 627, 96 S.Ct. 2737 (1976).

As a policy matter, the severance principle appears to strike a legitimate balance between protecting individuals against unconstitutional exploratory searches while making sure that thorough law enforcement work does not go unrewarded. *See Sovereign News Co. v. United States, supra; State v. Noll*, 116 Wis. 2d 443, 343 N.W. 2d 391, *cert. denied*, --- U.S. ---, 83 L.Ed. 2d 73, 105 S.Ct. 133 (1984).

## G

[1]  We therefore hold that the provisions of this warrant were severable, that police could constitutionally search for the listed drugs or items of the same class, but that the warrant could not authorize a general exploratory search of defendant's home and inventory of its contents. To rule otherwise would mean the phrase "stolen goods" in a warrant would automatically allow a complete inventory of a person's personal property, any time officers got in the front door, and even after the more precisely described objects of the search had been discovered. We rely on both the Fourth Amendment and Article I, Section 20 of our Constitution which we believe forbid these general inventory searches. In *State v. Noll, supra*, the Supreme Court of Wisconsin reached this result: there officers entered a home with a valid

search warrant for described stolen goods and found the described goods immediately. They proceeded to inventory the goods in the house, which upon check of police files revealed additional stolen items. The court ruled that the inventory evidence was properly suppressed.

## H

The State argues that notwithstanding the general nature of the warrant the officers acted in "objectively reasonable reliance" on the warrant and the exclusionary rule should not apply, relying on *United States v. Leon*, --- U.S. ---, 82 L.Ed. 2d 677, 104 S.Ct. 3405 (1984). *Leon* dealt however with a warrant based on what turned out to be insufficient probable cause, where the evidence was "sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Id.* at ---, 82 L.Ed. 2d at 701, 104 S.Ct. at 3423. The Supreme Court distinguished the *Leon* fact situation from situations where "a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at ---, 82 L.Ed. 2d at 699, 104 S.Ct. at 3422. We think this warrant falls into this latter class with respect to stolen goods: as we have seen, our search and seizure law provides no basis for the kind of exhaustive rummaging and inventory conducted here.

## I

*Massachusetts v. Sheppard*, --- U.S. ---, 82 L.Ed. 2d 737, 104 S.Ct. 3424 (1984), also is clearly distinguishable. There the Court allowed admission of evidence of a murder seized under a warrant for "controlled substances." Police had submitted an affidavit explicitly describing the evidence they wanted to search for, and eventually found, but the judge used a form warrant for "controlled substances" searches. The judge simply neglected to change the objects of the search warrant and affirmatively assured the officers that the warrant was in order. These unusual facts, not present here, supported the officers' "objectively reasonable reliance."

## J

[2] Turning to the particular items seized in this case, it is undisputed that officers could not identify any of the "stolen proper-

ty" mentioned in the warrant until after they had entered the house and van, inventoried the items they found, and compared them against stolen property lists. In their encounter with the property here there was no evidence of other circumstances which might properly have excited further inquiry, such as unusual quantity or types of items or unusual storage arrangements.

The only exception was the TV set, from which the outside serial number was missing. It does appear that a missing serial number, in connection with other suspicious circumstances, does constitute sufficient "immediately apparent" indicia of the contraband nature of an item to justify seizure. *See DePalma v. State*, 228 Ga. 272, 185 S.E. 2d 53 (1971) (number removed from pistol, probable cause to believe it was stolen); *State v. Sanders*, 431 So. 2d 1034 (Fla. App. 1983) (expensive TV set with serial number removed, probable cause); *State v. Mazzadra*, 28 Conn. Sup. 252, 258 A. 2d 310 (1969) (vehicle identification number). *But see Dill v. State*, 697 S.W. 2d 702 (Tex. App. 1985) (mere possession of item without serial number not probable cause to believe it was stolen).

The State does not argue, nor does it appear, that simply because the other goods were in the van that a lower expectation of privacy existed. *See Coolidge v. New Hampshire, supra* (automobile exception not applicable where car parked at house). We therefore hold that with the exception of the TV set the stolen goods were illegally seized and should have been suppressed. The court erred in denying the motion to suppress in its entirety. Our holding here also disposes of defendant's second, third, and fifth assignments of error.

## II

[3] By his next assignment, defendant contends that the verdict submitted to the jury with regard to the TV set was fatally defective. The jury found defendant "Guilty of Possession of Personal Property of Ronald Hewitt." This, argues defendant, constituted prejudicial error, since the verdict reached was not a crime. We note that the record does not reflect that defendant ever objected at trial to the form of the issues submitted, and the question does not appear to be properly before us. App. R. 10; *Hall v. Mabe*, 77 N.C. App. 758, 336 S.E. 2d 427 (1985). Even if it were, there is no requirement that the written verdict contain each and every ele-

ment of the subject offense. G.S. 15A-1237; *State v. Sanderson*, 62 N.C. App. 520, 302 S.E. 2d 899 (1983). It is sufficient if the verdict can be properly understood by reference to the indictment, evidence and jury instructions. *Id.*; *State v. Perez*, 55 N.C. App. 92, 284 S.E. 2d 560 (1981), *disc. rev. denied*, 305 N.C. 590, 292 S.E. 2d 573 (1982). The record, including the indictment and the instructions, makes it abundantly clear, beyond mistake by the jury, that knowing possession of goods stolen from Hewitt was at issue. The assignment is overruled.

### III

Defendant has abandoned his remaining assignment of error. No other error appears on the face of the record. With respect to the charge of possessing property stolen from Gaston Memorial Park, the court erred in admitting illegally seized evidence and there must be a new trial. With respect to the charge of possessing property stolen from Hewitt, we find no prejudicial error.

In case No. 85CRS8429 new trial.

In case No. 85CRS8431 no error.

Judge PARKER concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent. Assuming the search warrant was invalid to search for stolen goods, the officers were rightfully on the premises to search for illegally possessed controlled substances. The stolen goods were in plain view. I believe these stolen goods were lawfully seized by the officers and evidence of the goods was properly admitted. I vote to find no error.